IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NATANAEL RIVERA,

                                                    OPINION AND ORDER

                Plaintiff,

                                                  12-cv-476-bbc

    v.

GEORGE J. JIMENEZ,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights lawsuit, plaintiff Natanael Rivera, who is representing himself, is proceeding on two claims regarding his treatment at the Green Bay Correctional Institution: (1) defendant George Jimenez forced plaintiff to walk naked in front of other prisoners, in violation of the Eighth Amendment; and (2) defendant Jimenez used excessive force on plaintiff by "kneeing" him repeatedly and pulling on his chain, in violation of the Eighth Amendment.

Several motions are before the court. First, defendant has filed a motion for summary judgment on both of plaintiff's claims. Dkt. #16. In addition, plaintiff has filed several of his own motions: (1) "second motion to sanction defendants and their coworkers," dkt. #47; (2) "motion of genuine issues of material fact precludes summary judgment for the defendants," dkt. #50; (3) "motion for counsel," dkt. #54; (4) "motion for order," dkt. #55; and (5) "motion to take judicial notice." Dkt. #65. Finally, in the context of his brief in opposition to defendant's motion for summary judgment, plaintiff includes sections that

1

he calls "Plaintiff's Motion to Amend" and "Amended Pleadings."  Dkt. #51.  For the reasons discussed below, I am denying all of plaintiff's motions and granting defendant's.

The undisputed facts are set forth below.  Although both sides filed proposed findings of fact, plaintiff did not respond to defendant's proposed findings of fact.  This is a common mistake that pro se litigants make, which is why it is included in the court's Memorandum to Pro Se Litigants Regarding Summary Judgment Procedures, which plaintiff received with the preliminary pretrial conference order, dkt. #14 at 14, and again when defendant filed his motion for summary judgment.  The memorandum includes the following discussion:

> This court expects all litigants, including persons representing themselves, to follow this court's Procedures to be Followed on Motions for Summary Judgment. If a party does not follow the procedures, there will be no second chance to do so. Therefore, PAY ATTENTION to the following list of mistakes pro se plaintiffs tend to make when they oppose a defendant's motion for summary judgment:
>
> • Problem: The plaintiff does not answer the defendant's proposed facts correctly.
>
> Solution: To answer correctly, a plaintiff must file a document titled "Response to Defendant's Proposed Findings of Fact." In this document, the plaintiff must answer each numbered fact that the defendant proposes, using separate paragraphs that have the same numbers as defendant's paragraphs. See Procedure II.D. If plaintiff does not object to a fact that the defendant proposes, he should answer, "No dispute."

Under the court's procedures, "[u]nless the responding party puts into dispute a fact proposed by the moving party, the court will conclude that the fact is undisputed." Procedure to be Followed on Motions for Summary Judgment, II.C.  However, because it made no difference to the outcome of the case, I considered plaintiff's own proposed findings of fact in determining whether any of defendant's proposed findings of fact were genuinely

2

disputed.

## UNDISPUTED FACTS

On July 14, 2011, plaintiff Natanael Rivera was housed in segregation at the Green Bay Correctional Institution. Plaintiff was complaining about the way in which restraints had been placed on him during a family video visit earlier in the day and about his water being turned off. He stated that he was fed up with the "abuse" he received from correctional officials.

Plaintiff believed that he was experiencing "mental health issues" and he decided to cover the window of his cell with a towel so that prison staff could not see into his cell. In addition, plaintiff used his mattress to cover the traps on his cell door. (Plaintiff says that he did these things because he believed that prison officials wanted to kill him.) Covering the cell window is a violation of prison rules because it prevents staff from seeing whether a prisoner is engaging in acts that might pose a security threat, such as assembling weapons, hiding contraband or engaging in self harm.

Prison staff called for backup and began videotaping the incident. After plaintiff failed to comply with repeated orders by different staff members to remove the towel and mattress, he temporarily moved the towel to the side and told staff that he was not coming out, he was sick of living in the cell and he would make staff gas him every day. He then covered the window again.

Thomas Campbell, a lieutenant at the prison, instructed staff to prepare to extract

3

plaintiff from his cell. Defendant George Jimenez was one of these officers. Plaintiff stated that he would "swing at" anyone who came into his cell. When Campbell told plaintiff that he had permission to use "intervening agents" to get compliance, plaintiff said, "I don't care bring it on."

After plaintiff refused additional orders to remove the towel and mattress, Campbell administered a one-second burst of "incapacitating agent OC Mark 9" into plaintiff's cell. Plaintiff then complied and removed the towel and mattress.

Before opening plaintiff's cell door to remove him, Campbell directed plaintiff to remove his clothes for a visual inspection. (Defendants say that it is "standard protocol" to do this because of the "security and safety concerns potentially posed by noncompliant inmates"; plaintiff says that staff were violating "DAI policies," but neither party cites any policies in support of his position.) Plaintiff complied and then came to the front of his cell so that restraints could be applied. The officers did not put plaintiff's clothes back on him because the clothes were contaminated with the incapacitating agent.

Defendant and the other officers escorted plaintiff to the shower down the hall so that he could rinse off the incapacitating agent. In the process, plaintiff passed by other prisoners' cells. Neither defendant nor any of the officers tried to draw attention to plaintiff during the walk. It took approximately 40 seconds to transport plaintiff from his cell to the shower.

After plaintiff showered and was taken to a new cell, he covered the window of that cell door with a mattress. When officers ordered plaintiff to remove the mattress, he stated

that "he did not give a fuck," he was going to do everything the hard way and he did not care who he hurt. Campbell told plaintiff that, if he did not comply, Campbell would again introduce incapacitating agents into his cell to gain compliance. After Campbell administered a one-second burst of "OC Projector" into his cell, plaintiff complied with orders to come to the front of his cell so that restraints could be applied.

Defendant and other officers escorted plaintiff to another cell, where they directed him to kneel so that his leg restraints could be removed. After removing the leg restraints, staff ordered plaintiff to stand up and move inside his cell. When he refused multiple orders, defendant and other officers attempted to lift plaintiff into the cell. At that point, plaintiff began resisting by kicking his feet out behind him and trying to pull his arms away from staff. After struggling for approximately ten seconds, defendant and the officers were able to move plaintiff inside the cell. The video shows the officers using their knees to push plaintiff's back to move him forward. (This portion of the incident occurs at around minute 41 of the video tape).

After plaintiff was inside the cell, defendant and the officers removed plaintiff's arm restraints. Defendant made no forceful pulling or tugging motions while removing the restraints.

Plaintiff refused a shower, a smock and medical attention.

OPINION

A. <u>Plaintiff's Motions</u>

1. <u>Motion for leave to amend complaint</u>

In the order screening plaintiff's complaint, I did not consider potential claims about the validity of the decisions to use chemical agents on plaintiff or to conduct a strip search because plaintiff did not include any facts about those events in his complaint. Although plaintiff named several defendants in the caption, I dismissed all of them except Jimenez because plaintiff did not include any allegations about the others. <u>Id.</u> Plaintiff referred generally to "defendants" throughout his complaint, but that is not sufficient to give each defendant notice of plaintiff's claim against him. <u>Grieveson v. Anderson</u>, 538 F.3d 763, 778 (7th Cir. 2008) (plaintiff may not rely on "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct"). After this order issued, plaintiff did not seek reconsideration of the decision and he did not file an amended complaint to clarify his allegations, though he has filed various other motions with the court since then.

In plaintiff's brief in opposition, he says for the first time that he intended to challenge the validity of the strip search and that he wishes to reinstate his claims against the dismissed defendants. Dkt. #51 at 19-20. In addition, he challenges the decision to use chemical agents. However, it is too late for plaintiff to raise these issues now. <u>Shanahan v. City of Chicago</u>, 82 F.3d 776, 781 (7th Cir.1996) (plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"). In any

6

event, even if I were to grant plaintiff's motion, it would not make any difference because plaintiff has not adduced evidence that any of the officers involved violated his Eighth Amendment rights at any point in the course of the events relevant to this case.

2. Motion for assistance in recruiting counsel

Accompanying plaintiff's brief in opposition to defendant's motion for summary judgment was a request for appointment of counsel, the first such request that plaintiff has filed in this case. Although a court does not have the authority to compel a lawyer to represent a particular litigant, it may assist an indigent plaintiff in recruiting a lawyer. 28 U.S.C. § 1915(e)(1). However, a plaintiff must make reasonable efforts to find a lawyer on his own before the court will intervene. Jackson v. County of McLean, 953 F.2d 1070 (7th Cir. 1992). To prove that he has made reasonable efforts to find a lawyer, the plaintiff should give the court rejection letters from at least three lawyers. In this case, plaintiff has not shown that he made any efforts to obtain a lawyer on his own.

Even if I were to excuse plaintiff's failure to follow Jackson, he has not shown that he is entitled to court assistance. A court will seek to recruit counsel for a pro se litigant only when he demonstrates that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his ability to prosecute it. Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007). In this case, the claims are not complicated. They do not require expert testimony or significant discovery. Rather, they required plaintiff to do little more than explain his version of events. Plaintiff has shown

that he is capable of doing that.

In his two-page motion, plaintiff says that he needs a lawyer because he has not been able to make the court understand what he is saying and he cites as evidence his complaint, which he says the court construed more narrowly than he intended.  Plaintiff makes a similar argument in what he calls his "motion to take judicial notice," dkt. #65, which appears to be a renewed motion for assistance in recruiting counsel.  Although it is true that plaintiff failed to include many important facts in his complaint, he *did* include many of those missing facts in his summary judgment materials, showing that he was capable of doing so earlier.  He does not explain why he did not even try to file an amended complaint when the court pointed out the problems with it.

To the extent that plaintiff believes that his failure to respond to defendant's motion for summary judgment shows that he does not have the ability to represent himself, I disagree.  Filing responses to proposed findings of fact is no more difficult than filing one's own proposed findings of fact, which plaintiff was able to do.  Although I do not know why plaintiff failed to respond to defendant's proposed findings of fact, it is not because he did not have the ability to do so.

Finally, plaintiff says that "mental health issues" and concerns over his spelling and writing support a decision to help him obtain counsel.  However, in light of the straightforward nature of his claims, I am not persuaded that his limitations render him unable to represent himself.  Accordingly, I am denying his motions for assistance in recruiting counsel.

3.  Other motions

Plaintiff's motion for sanctions is a renewed version of a previous motion in which plaintiff alleged that prison officials altered a video of the incidents at issue in this case. I denied the first motion because plaintiff did not present any evidence to support it. In his renewed motion and supporting declaration, he gives several reasons for his belief of misconduct by prison officials. First, he says that he viewed the video on two separate occasions, once on September 5, 2013, and again on September 17, 2013, but the video he watched on September 17 was not the same video that he watched on September 5. However, plaintiff does not identify any differences in the content between the two videos, so this allegation is not helpful.

Second, plaintiff says that the label on the DVD he viewed on September 17, 2013, did not have the same writing and exhibit sticker on it as either the DVD he viewed on September 5 or the photocopy of the DVD that defendant filed with the court. These differences suggest that there are multiple copies of the DVD, but they provide no support for a belief that prison officials altered the *content* of the video.

Finally, plaintiffs says that one of the officers is wearing a "s[i]lver metallic watch" at one point in the video, but he is wearing a "gray plastic watch" at another point in the video. Plaintiff never explains what inference he wants the court to draw from this observation, but presumably he believes it is evidence that some or all of the video was "faked" by prison officials for the purpose of this lawsuit. Regardless, I see no differences in the watch that the officer was wearing. Even if there were two watches, plaintiff does not deny that he is the

prisoner in the video and he does not identify any specific portion of the video that is inaccurate. Accordingly, I am denying his motion for sanctions.

In his "motion for order," plaintiff seems to be complaining about orders in which the court denied previous motions he filed in this case, but he does not ask for any specific relief related to those orders. In addition, he says that prison officials are interfering with the mailing of his summary judgment materials, but this issue is moot because the court has received those materials. He concludes the motion by asking for appointment of counsel and a transfer to a different facility. I denied plaintiff's motion for assistance in recruiting counsel for the reasons discussed above. He has not made any showing that he is entitled to a prison transfer.

Finally, I am denying as unnecessary plaintiff's "motion of genuine issues of material fact precludes summary judgment for the defendants," dkt. #50, because it is not a motion, but simply a request to deny defendant's motion for summary judgment.

B. Defendant's Motion for Summary Judgment

1. Forced nudity

As I stated in the screening order, the Court of Appeals for the Seventh Circuit has not considered a claim in which a prisoner was forced to be naked in front of other prisoners, but I concluded in Ghashiyah v. Frank, No. 07-C-308-C, 2007 WL 2061053, *7 (W.D. Wis. 2007), that the standard for evaluating strip searches should apply to such a claim. Neither side questions that conclusion in their summary judgment submissions.

In evaluating whether a strip search violates the Constitution, the Court of Appeals for the Seventh Circuit has stated that

> only those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional. In other words, the search must amount to calculated harassment unrelated to prison needs, with the intent to humiliate and inflict psychological pain.

Whitman v. Nesic, 368 F.3d 931, 934-35 (7th Cir. 2004) (internal quotations and citations omitted).

No reasonable jury could find that plaintiff has met that standard in this case with respect to defendant, whose only involvement was to help escort plaintiff to the shower. The undisputed facts show that plaintiff's clothes were not returned to him immediately after the strip search because they were contaminated and that plaintiff was escorted down the hall so that he could be taken to the shower. Although perhaps defendant or another officer could have attempted to locate something to cover plaintiff during the escort, that failure shows at most that defendant could have been more considerate; it does not show that defendant or any of the other officers involved were trying to humiliate plaintiff. Particularly because the escort lasted only 40 seconds and neither defendant nor the other officers made any attempt to draw attention to plaintiff during the escort, there is no basis for finding that defendant violated plaintiff's constitutional rights.

In his brief, plaintiff says that a desire to humiliate him may be inferred because he was not taken to the shower after a second incident involving chemical agents the same day. Plaintiff says that the reason is that there was no "audience" present the second time.

Plaintiff does not cite any evidence showing that more prisoners were able to see him during the first incident. In any event, plaintiff does not deny defendant's proposed finding of fact that officers did not give plaintiff a shower after the second incident because he refused one. Accordingly, I am granting defendant's motion for summary judgment as to this claim.

Although I have concluded that it is too late for plaintiff to add claims about the decision to use chemical agents or perform the strip search, even if those claims had been included in his complaint, he could not prevail on them. Again, the facts show that the officers had legitimate security justifications for both decisions, so no reasonable jury could find that any of the officers involved violated plaintiff's Eighth Amendment rights.

2. Excessive force

In his complaint, plaintiff identified two instances of alleged excessive force while defendant and other officers were moving him to another cell. First, he alleged that defendant "knee[d]" him "over and over," causing pain and bruising on his back. Second, plaintiff alleged that defendant caused bruises again by pulling on the chain attached to plaintiff's hand restraints.

In determining whether an officer has used excessive force against a prisoner in violation of the Eighth Amendment, the question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320 (1986). The factors relevant to making this determination include:

- the need for the application of force;

- the relationship between the need and the amount of force that was used;

- the extent of injury inflicted;

- the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them;

- any efforts made to temper the severity of a forceful response.

No reasonable jury could find that defendant's conduct involved a malicious or sadistic application of force for the mere purpose of causing harm to plaintiff in connection with either alleged incident. It is undisputed that plaintiff refused repeated orders to stand up and walk into his cell on his own and that he resisted when staff tried to assist him. Although the video shows that officers used their knees to help push plaintiff into his cell, the video does not show any force that was excessive under the circumstances. The officers were not striking plaintiff with their knees, only pushing him. Particularly because that portion of the incident lasted less than ten seconds, I see no basis for finding that the force defendant used was unreasonable, let alone malicious or sadistic.

In his declaration, plaintiff repeats his allegation that officers kneed him "over and over," causing bruises. Rivera Decl. ¶ 24, dkt. #53. However, at the summary judgment stage, plaintiff cannot simply repeat conclusory allegations from his complaint in his declaration; he must set forth specific facts showing that there is a genuine issue for trial. Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990). In any event, because the video shows clearly that defendant did not use excessive force, I could not credit his

13

testimony to the contrary. Scott v. Harris, 550 U.S. 372 (2007) (in excessive force case, concluding that lower court erred in accepting facts as alleged by plaintiff when they were discredited by videotape).

With respect to the second incident, defendant denies that he used excessive force when removing plaintiff's restraints. Although the video does not show defendant's or plaintiff's hands during the relevant time, it includes no signs of an unusual amount of force. The only mention in plaintiff's declaration about the amount of force used in the second incident is a paragraph in which plaintiff writes "IRON x FLESH x FORCE = PAIN AND SUFFERING." Rivera Decl. ¶ 35, dkt. #53. Obviously, that statement would not allow a juror to make a determination about the reasonableness of the force defendant used in this particular case. Accordingly, I am granting defendant's motion for summary judgment with respect to plaintiff's excessive force claims as well.

ORDER

IT IS ORDERED that

1. Plaintiff Natanael Rivera's (1) "second motion to sanction defendants and their coworkers," dkt. #47; (2) "motion of genuine issues of material fact precludes summary judgment for the defendants," dkt. #50; (3) "motion for counsel," dkt. #54; (4) "motion for order," dkt. #55; (5) "motion to take judicial notice," dkt. #65, and (6) "motion to amend," dkt. #51, are DENIED.

2. Defendant George Jimenez's motion for summary judgment, dkt. #16, is

GRANTED.

3.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of December, 2013.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge